IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| AURORA ORGANIC DAIRY CORPORATION, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 11-3194-CV-S-DPR |
| WESTERN DAIRY TRANSPORT, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM AND OPINION

Now pending before the Court are 1) a Motion for Summary Judgment filed by Defendant Western Dairy Transport, LLC (Doc. 63); 2) a Motion for Summary Judgment as to Liability filed by Plaintiff Aurora Organic Dairy (Doc. 65); and 3) a Motion to Strike the Statements, Opinions, Testimony, and Affidavits of Neil Bogart and Carolyn Otten filed by Defendant Western Dairy Transport, LLC (Doc. 67). For the reasons set forth below, both motions for summary judgment are **DENIED**, and the Motion to Strike Statements, Opinions, Testimony, and Affidavits of Neil Bogart and Carolyn Otten is **GRANTED in part and DENIED in part**.

### FACTUAL BACKGROUND

As relevant here, Plaintiff Aurora Organic Dairy Corporation ("Aurora") contracted with Defendant Western Dairy Transport, LLC ("WDT") to transport raw milk from various farms to Aurora's processing facility in Platteville, Colorado. Between May 18, 2010, and June 3, 2010, WDT carried 28 tankers of milk from three Aurora farms: Coldwater East, Coldwater West, and Pepper Dairies. Upon delivery at Aurora's processing facility, the milk was deemed to be

contaminated with unidentified black particles. The 28 loads were rejected; the milk was ultimately destroyed. Aurora brought this action seeking damages from WDT for the contaminated milk.

## MOTION TO STRIKE STATEMENTS, OPINIONS, TESTIMONY, AND AFFIDAVITS OF NEIL BOGART AND CAROLYN OTTEN

Under Fed. R. Civ. P. 37(c)(1), a court may exclude information or opinions provided by undisclosed witnesses as a sanction for failing to disclose them to the opposing parties. The exclusion is "automatic and mandatory" unless the failure was "substantially justified or is harmless." *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004). *See also Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). Pursuant to Fed. R. Civ. P. 26(a)(2), a party is required to specifically disclose the identity of any witness "it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Under Rule 702, a witness is categorized as an expert based upon his or her reliance on "scientific, technical, or other specialized knowledge." Thus, a fact witness provides expert testimony if the testimony contains opinions based on that scientific, technical, or specialized knowledge, "regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation." *OCI Chem. Corp. v. Am. Railcar Indus., Inc.*, Case No. 4:05-cv-1506-FRB, 2009 WL 928730 (E.D. Mo. March 31, 2009) (citing *Musser*, 356 F.3d at 757 n. 2).

Defendant WDT seeks to strike all statements, opinions, testimony, and affidavits of Plaintiff Aurora's witnesses Neil Bogart and Carolyn Otten. In brief, WDT alleges that the statements and opinions expressed by Neil Bogart and Carolyn Otten and used in support of Aurora's Motion for Summary Judgment should be stricken because they were not properly disclosed. Specifically, WDT alleges that in initial disclosures filed pursuant to Fed. R. Civ. P.

2

26(a)(1), Aurora identified Neil Bogart as a fact witness only, and did not name or otherwise designate Carolyn Otten at all. Aurora did not submit any supplemental disclosures. WDT further alleges that Aurora did not disclose either Bogart or Otten as expert witnesses in its expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2). Aurora, however, provided declarations of both Bogart and Otten in support of its motion for summary judgment. WDT requests that the Court strike the statements and opinions of Bogart and Otten as a sanction for failure to disclose them as experts, as specified in Fed. R. Civ. P. 37(c)(1).

Aurora responds that its failure to identify Carolyn Otten was inadvertent and ultimately harmless because the reports she issued were fully disclosed to WDT, and WDT used them extensively in deposing other witnesses, as did WDT's expert Clifford Bigelow. Moreover, Aurora contends that both Bogart and Otten are merely fact, not expert, witnesses, and therefore specific expert disclosure under Rule 26(a)(2) was not required.

In reply, WDT contends that it intentionally forwent deposition of Neil Bogart because he was not disclosed as an expert witness, and WDT presumed that Aurora would not offer Bogart's opinions. WDT argues that had it known Aurora intended to use Bogart as an expert, it would have sought to depose him.

The Court has reviewed the declarations of Neil Bogart and Carolyn Otten and finds that both expressed opinions based on their scientific, technical, and specialized expertise. Accordingly, the Court finds that Aurora should have designated both Neil Bogart and Carolyn Otten as experts and should have disclosed them accordingly. Aurora failed to disclose Carolyn Otten as either a fact or expert witness, but subsequently relied on her declaration and scientific reports in support of its motion for summary judgment. This was improper. Therefore, as a

sanction for Aurora's failure to so disclose, Otten's declaration and reports are excluded from use in support of the motion for summary judgment and may not be used at trial.

The Court recognizes that Bogart was a participant in the investigation of the contaminated milk at the earliest stages, and therefore may have witnessed and participated in events that are the basis of this lawsuit. Moreover, Aurora did disclose Bogart as a fact witness. This disclosure is insufficient, however, to save his opinion testimony. Thus, Bogart's statements describing what he observed or participated in may be used to support the motion for summary judgment, and he may testify to those observations at trial. His opinions and recommendations made as a result of his investigation, however, are based upon scientific, technical, or specialized expertise, and cross the boundary between fact and expert testimony. As a result, the Court has disregarded his expert testimony in support of the motion for summary judgment, and Bogart will be precluded from testifying as an expert at trial.

Accordingly, as described above, WDT's Motion to Strike Statements, Opinions, Testimony, and Affidavits of Neil Bogart and Carolyn Otten is **GRANTED in part and DENIED in part**.

## MOTIONS FOR SUMMARY JUDGMENT

*Legal Standards*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Popp Telecom, Inc. v. Am. Sharecom, Inc.,* 361 F.3d 482, 487 (8th Cir. 2004). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving

party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Johnson v. Crooks*, 326 F.3d 995, 1005-06 (8th Cir. 2003). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Vaughn v. Roadway Express, Inc.*, 164 F.3d 1087, 1089 (8th Cir. 1998). After the moving party has made that showing, the burden shifts to the non-moving party to demonstrate the presence of a genuine issue for trial. *See Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

*Carmack Amendment*

The Carmack Amendment to the Interstate Commerce Act holds a carrier of goods in interstate commerce liable for loss, damage, or injury to property they transport. *See Kaiser Aluminum & Chem. Corp. v. Illinois Cent. Gulf R.R. Co.*, 615 F.2d 470, 474 (8th Cir. 1980) (citing *Missouri Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134 (1964)). To make out a *prima facie* case under the Carmack Amendment, a shipper must show 1) the goods were delivered to the carrier in good condition; 2) the goods arrived in damaged condition; and 3) the amount of damages. *See REI Trans., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 699 (7th Cir. 2008). If a shipper makes this showing, the carrier may avoid liability by demonstrating 1) it

5

was not negligent, and 2) the cargo was damaged by other means. *See Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 370-71 (7th Cir. 2000).

A shipper may demonstrate delivery to the carrier in good condition through direct or circumstantial evidence. Courts have held a clean bill of lading may sufficiently establish delivery in good condition in situations where the carrier can visually inspect the goods for damage. *See Pillsbury Co. v. Illinois Cent. Gulf R.R.*, 687 F.2d 241, 244 (8th Cir. 1982). But in cases where damage may not be immediately visible to the carrier, the shipper is required to produce additional or "cumulative" evidence to establish delivery in good condition. *See Nat'l Trans., Inc. v. Inn Foods, Inc.*, 827 F.2d 351, 354 (8th Cir. 1987).

### *Cross Motions for Summary Judgment*

In its own motion, and in response to WDT's Motion for Summary Judgment, Aurora argues that it has sufficiently made its *prima facie* case, and WDT cannot demonstrate it was not negligent. Aurora points to the following evidence (Doc. 66) to demonstrate that the raw milk was free from contaminants when it was loaded onto WDT's tankers: 1) the damaged milk did not come from a single source—it originated from three separate farms and six different milk silos—but all of the damaged milk was transported on WDT tankers; 2) visual inspection of the milk revealed no contamination; 3) bulk tank samples (samples taken of the raw milk from the silo prior to transfer to a tanker) for all twenty-eight of the rejected loads were "clean" (not contaminated); 4) no notes appeared on the bills of lading that would indicate debris or other contaminants in each load; 5) beginning in July 2009 and into 2010, WDT tankers that arrived for transport of Aurora milk were dirty, and "unsuitable" for transportation of the milk; and 6) the contamination ceased when Aurora took over the process of washing the tankers in a "closed-loop" system.

Aurora contends that WDT cannot overcome the presumption of negligence in the face of evidence that its tankers were frequently dirty, and it took no corrective action when informed of the problems with tank washes and wash stations. Aurora further argues that WDT's own expert identified only three potential sources of contamination: the farm, the tankers shedding some material, or a wash station introducing foreign material. Aurora contends that because it has sufficiently demonstrated that the contamination could not have come from its farms, the only potential explanations left are both the responsibility of WDT, thus making WDT liable. Thus, Aurora contends, the only issue for trial is the amount of damages to which it is entitled.

In opposition to Aurora's Motion for Summary Judgment, and in its own motion, WDT argues that Aurora has not sufficiently made its *prima facie* case because Aurora did not establish that the raw milk was delivered to the tankers in good condition. WDT points specifically to evidence from the testimony of Joe Drogowski, and the exhibit chart of Donna Getman, that black specks appeared on several of the filters from farm milk silos. WDT further contends that these filters, which might have shown farm-based contamination, were destroyed without having been tested.

WDT further supports its argument with the testimony of its expert, Cliff Bigelow, who opines that there is insufficient evidence to show that the tankers themselves or the tanker wash process introduced the foreign matter into the raw milk. Absent such evidence, Bigelow concludes that the raw milk must have been contaminated prior to delivery to WDT's tankers. WDT contends alternatively that even if it is held liable, certain damages should be excluded because Aurora failed to follow its own practices and procedures once it was determined that the raw milk was delivered by WDT in damaged condition. Finally, WDT maintains that not all of the samples taken of the raw milk before it was loaded onto the tankers were sent for testing, and

the filters between the farm silos and the WDT tankers were destroyed. WDT thus argues that Aurora's claims should be dismissed as a remedy for spoliation of that evidence, or alternatively, the jury should be given an adverse inference instruction.

Based upon the arguments of the parties and the evidence submitted in support of the competing motions for summary judgment, the Court finds that genuine issues of material fact exist as to whether Aurora has made its *prima facie* case under the Carmack Amendment. Aurora has provided circumstantial evidence that the milk from the three farms was delivered to WDT's tankers in good condition, but WDT has provided testimonial evidence that "black specks" appeared in milk before it was filtered into tankers, and expert testimony that the contaminants did not come from WDT's tankers. In addition, WDT has raised questions regarding the destruction of filters that might have provided relevant evidence regarding the pre-delivery condition of the milk. This evidence calls into question whether Aurora has sufficiently established the first element of its prima face case; it raises a genuine issue of material fact for a jury. As such, Aurora's Motion for Summary Judgment is **DENIED**.

By the same token, however, Aurora has provided sufficient evidence of delivery of the raw milk to the tankers in good condition. While WDT's evidence calls into question Aurora's establishment of its prima facie case, it is not sufficient to entitle WDT to judgment as a matter of law. Accordingly, WDT's Motion for Summary Judgment is also **DENIED**.

Finally, regarding the issue of the destruction of the filters prior to testing, the Court will consider WDT's request for an adverse inference instruction at the upcoming Pretrial Conference as it is the subject of one of WDT's pending motions in limine.

### CONCLUSION

Therefore, based on all the foregoing, both Motions for Summary Judgment filed by WDT (Doc. 63) and Aurora (Doc. 65) are **DENIED**. WDT's Motion to Strike Statements, Opinions, Testimony, and Affidavits of Neil Bogart and Carolyn Otten is **GRANTED in part and DENIED in part**. At trial, Neil Bogart may testify as a fact witness, but not as an expert.

**IT IS SO ORDERED.**

**DATED: October 15, 2013**

                                          /s/ *David P. Rush*
                                          **DAVID P. RUSH**
                                          **United States Magistrate Judge**